GARDNER M. SKINNER v. GRACE CHURCH OF MOUNT CLEMENS.

*Deed to non-existent grantee—Religious society.*

1. A deed is void that runs to a non-existent grantee.

2. Episcopal churches are forbidden by law to acquire title to land until their articles of organization are recorded. How. Stat. § 4661. But the grantees of certain land deeded it as a church site for the use of a congregation that did not organize until several years afterward. After it was organized, however, the rector, who knew the facts, took from the successors of these persons, who were then the vestry of the church, a deed to a part of the land in satisfaction of a claim he had for unpaid salary. *Held,* that he was thereby estopped from afterwards suing the church for the amount unpaid, and the members of the vestry who had given the deed were also estopped from claiming that the amount had not been paid.

Error to Macomb. (Stevens, J.)  June 19.—September 23.

ASSUMPSIT.  Plaintiff brings error.  Affirmed.

*A. L. Canfield* and *O'Brien J. Atkinson* for appellant.

*Martin Crocker* for appellee.

SHERWOOD, J.   This is an action of assumpsit, brought by the plaintiff in the Macomb circuit court, to recover a balance of $465 claimed to be due for his services as rector of Grace Church at Mt. Clemens.  The case was tried in the court below by Judge Stevens without a jury, and a judgment rendered in favor of the defendant.

Special findings were made and filed by the judge, from which it appears that for several years prior to 1867 and up to the year 1871 there was a congregation in Mt. Clemens known as Grace Church which worshipped according to the forms, usages and religious belief of the Protestant Episcopal church, and elected a vestry and wardens, employed a clergyman and transacted the affairs of the church, but without being incorporated under the statute providing for the organization of such churches; that in October, 1867, Arthur J. Robertson conveyed lot 4 of said Robertson's addition to the village of Mt. Clemens to Robert P. Eldridge, Charles Wood, Thomas M. Crocker and William Longstaff, who paid therefor, and in December, 1867, they conveyed said lot to Grace Church of Mt. Clemens, for the purpose of a site upon which to construct a church building.  The deed was made and delivered for the purpose aforesaid, without any other consideration.  That soon after the receipt of said deed the congregation took possession of the lot, built a church on the west half thereof, and up to the time of the commencement of this suit have continually used and occupied the premises for church purposes, the east half of said lot remaining a vacant space, lying east of the church.  That in 1872 said Charles Wood, being about to leave Mt. Clemens, executed a quitclaim deed of said lot to Eldridge, Crocker and Longstaff.  That in 1871 the defendant was regularly organized

and incorporated, and in July, 1874, the plaintiff was employed
as rector of the defendant, and was to receive as compen-
sation for his services a salary of $1000 per year.    That at
the expiration of the second year the defendant was indebted
to the plaintiff to the amount of $465, and the plaintiff
proposed to the defendant to receive in payment and full
settlement of the amount due him on his salary for said two
years, the east half of said church lot; and at a vestry meet-
ing of the defendant, held November 11, 1876, called by the
plaintiff as rector, a resolution was passed by which the pro-
position of the plaintiff was accepted, and the persons in
whom the title of the lot was vested were instructed to con-
vey said east half of said lot to the plaintiff.    The plaintiff
was present at said vestry meeting and was fully informed in
regard to the action of the vestry respecting the conveyance
to him of the east half of the lot.    That November 14th, 1876,
said Eldridge, Crocker and Longstaff, with their wives, in
pursuance of the resolution passed by the said vestry, executed
and delivered to plaintiff a deed of the east half of said
church lot, which deed was received by the plaintiff without
objection and placed on record.    That it was the intention of
the warden and vestry of said church, at the time of the
passage of said resolution, to convey the title of the east half
of said lot to the plaintiff in payment for the salary due
him as aforesaid, and they understood that by the execution
and delivery of said deed, made by said Eldridge, Crocker
and Longstaff, that the title to said lot had been conveyed to
said plaintiff.    That plaintiff knew, at the time of the pass-
age of said resolution by said vestry, and for some time prior
thereto, that at the time of the execution of said deed from
said Wood, Eldridge, Crocker and Longstaff to said church
in 1867 said church had not been organized under the statute.
That, from the foregoing facts, the court found the law to
be that the effect of the execution and delivery of said deed,
in pursuance of said resolution of said vestry, was to pass a
title to the plaintiff which the defendant, and also Eldridge,
Crocker and Longstaff, would be forever precluded from ques-
tioning, and that the plaintiff cannot maintain his action for

the recovery of the balance of his salary for which said deed was given and accepted in settlement.

We think this finding of law by the court, from the facts above stated, is correct. The plaintiff claims he got no title under his deed of November, 1876, because of the deed made to the church in 1867, and therefore he has received no pay for the claim he makes in this suit. The defendant in this case was organized in 1871, under the statute providing for the organization of Protestant Episcopal churches, which says: "It shall not be lawful for such church to acquire the title to any property until such articles are recorded" (meaning organizing articles of agreement). How. Stat. § 4661.

There was no conveyance to the church after its organization. The deed relied upon by the plaintiff as divesting the grantors of their title was executed several years before there was any legal organization of this church. It is a well-settled rule of the common law that a deed running to a grantee not in existence is a nullity. 2 Bl. Com. 296; 4 Kent's Com. 462; *Jackson v. Cory* 8 Johns. 385; *Hornbeck v. Westbrook* 9 Johns. 73; Co. Litt. 3*a*; Co. Litt. 26*b*; 2 Washb. Real Prop. 566, 567. We know of no rule changing the common law upon this subject. The defendant could not, therefore, hold the property, and had no title thereto under the deed of 1867. Eldridge, Crocker and Longstaff still held the legal title to the property, notwithstanding such conveyance. The church acquired the right to take the title as soon as it was legally organized in 1871, and to make a legal contract for the services of its rector; and it appears that it was under such a contract that the liability of the defendant was incurred.

It further appears that the grantors in the first deed never repudiated their act or the intention to convey by their deed lot 4 to the church, and when a proposition was made to the church to pay the balance due its rector for clerical labor, by deeding to him the east half of the lot, he took such deed, and on ascertaining that the legal title was still in Eldridge, Crocker and Longstaff, the warden and vestry of the church, knowing that the actual interest was in the church, by a vote directed these three gentlemen holding the legal title, to make

to plaintiff the deed, which they accordingly did.    This deed was willingly accepted by the plaintiff, he knowing all the facts and circumstances, in full of his claim in this case. These proceedings, of course, conveyed complete title to the plaintiff, and forever estop all parties interested from claiming otherwise, either in law or equity.

The judgment of the circuit court must be
Affirmed with costs.

The other Justices concurred.